**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Zandra Manion, et al., | No. CV-17-03262-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Ameri-Can Freight Systems Incorporated, et al., | |
| Defendants. | |

This case arises from a March 12, 2016 traffic accident that resulted in the instantaneous death of Johnathan Blyler ("the Decedent"). The vehicle that struck the Decedent's vehicle was a tractor-trailer being driven by Steven Robertson, an employee of Ameri-Can Freight Systems, Inc. (collectively, "Defendants"). The plaintiffs in this lawsuit are (1) the Decedent's mother, Zandra Manion ("Mother"), who asserts a wrongful death claim under A.R.S. § 12-611 as a statutory beneficiary of the Decedent, and (2) the Decedent's wife, Lisa Blyler ("Wife"), who asserts both a wrongful death claim under A.R.S. § 12-611 in her capacity as a statutory beneficiary and a survival claim under A.R.S. § 13-1440 on behalf of the Decedent's estate ("the Estate") (together, "Plaintiffs").

Now pending before the Court is a motion for partial summary judgment filed by Defendants. (Doc. 73.)[1] In Section A of their motion, Defendants seek summary judgment on five causes of action (negligent supervision, negligent retention, negligent maintenance,

---
[1] The parties have also filed three *Daubert* motions that are fully briefed. (Docs. 70, 71, 72.) The Court intends to rule on those motions during the final pretrial conference, which will be set by separate order.

negligent hiring, and negligent training). (*Id.* at 3-9.) In Section B of their motion, Defendants seek summary judgment on the following four damage claims: (1) any claim for the Decedent's future wages asserted by the Estate as part of the survival action, (2) any claim related to the Decedent's pain and suffering, (3) any claim for the Decedent's future wages asserted by Mother or Wife as part of their respective wrongful death actions; and (4) any claim for punitive damages. (*Id.* at 9-16.)

In response, Plaintiffs clarified that "[m]ost of the Motion is not opposed." (Doc. 84 at 1.) Specifically, Plaintiffs stipulated to the dismissal and/or non-existence of all five of the causes of action specified in Part A of Defendants' motion. (*Id.* at 1-2.) Plaintiffs further stated that "Plaintiffs Manion and Blyler are not making claims for economic losses as part of their action for wrongful death" and that "Plaintiffs stipulate to the dismissal of their claim for punitive damages." (*Id.* at 2.) Finally, in a separate response, the Estate stated that "no Plaintiff has made a claim for pain and suffering." (Doc. 82 at 6.)

Given these concessions and clarifications, the only disputed issue for the Court to resolve is the challenge to the Estate's ability to recover future wages as part of the survival action. In a nutshell, Defendants argue that such damages are unavailable for two reasons: (1) an estate cannot, as a matter of law, recover future economic losses in a survival action where the decedent died immediately, and (2) alternatively, the Estate's claim for future loss of income is too speculative. (Doc. 73 at 9-12; Doc. 87 at 2-7.) For the following reasons, the Court disagrees and denies the motion.[2]

**LEGAL STANDARD**

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In order to carry its burden of

---

[2] The parties have requested oral argument, but the Court will deny the requests because the issues have been fully briefed and oral argument will not aid the Court's decision. See Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "If . . . [the] moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103.

"Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "A genuine dispute of material fact exists if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *United States v. JP Morgan Chase Bank Account No. Ending 8215 in Name of Ladislao V. Samaniego, VL: $446,377.36*, 835 F.3d 1159, 1162 (9th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). The court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." *Rookaird*, 908 F.3d at 459. Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**ANALYSIS**

I. <u>Whether The Estate Can Recover Future Loss Of Income In The Survival Action</u>

"A wrongful death claim and a survival claim are separate claims arising from the same incident." *Gandy v. United States*, 437 F. Supp. 2d 1085, 1086 (D. Ariz. 2006). Both types of claims are being asserted in this case: Wife and Mother have each asserted a wrongful death claim under A.R.S. § 12-611 and the Estate (acting through Wife) has separately asserted a survival claim under A.R.S. § 14-3110. In their motion, Defendants don't dispute the Estate's ability to assert a survival claim but argue the Estate should be barred from seeking one particular category of damages as part of that claim—economic

damages arising from the loss of Decedent's future wages.

Before addressing Defendants' argument, it is helpful to provide some background concerning the nature of survival and wrongful death actions under Arizona law. Both are creatures of statute. First, the Arizona survival statute provides:

> Every cause of action, except a cause of action for damages for breach of promise to marry, seduction, libel, slander, separate maintenance, alimony, loss of consortium or invasion of the right of privacy, shall survive the death of the person entitled thereto or liable therefor, and may be asserted by or against the personal representative of such person, provided that upon the death of the person injured, damages for pain and suffering of such injured person shall not be allowed.

A.R.S. § 14-3110. "Under Arizona law, a claim under the survival statute may be brought only by a decedent's estate." *Gotbaum v. City of Phoenix*, 617 F. Supp. 2d 878, 883 (D. Ariz. 2008). The enactment of the survival statute "extended the right of a decedent's personal representative to pursue the decedent's personal injury claim against a tortfeasor." *Quintero v. Rogers*, 212 P.3d 874, 877 (Ariz. Ct. App. 2009).

Second, the Arizona wrongful death statute provides:

> When death of a person is caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death was caused under such circumstances as amount in law to murder in the first or second degree or manslaughter.

A.R.S. § 12-611. The Arizona courts have explained that "[a] wrongful death action is an original and distinct claim for damages sustained by the statutory beneficiaries and is not derivative of or a continuation of a claim existing in the decedent." *Barragan v. Superior Court of Pima Cty.*, 470 P.2d 722, 724 (Ariz. Ct. App. 1970). Such an action "is for the wrong to the beneficiaries, confined to their loss because of the death." *Id.* at 725.

Defendants argue that, at least in cases (like this case) where a decedent dies upon impact, the wrongful death statute provides the only avenue for seeking damages based upon the decedent's lost future wages. (Doc. 73 at 9-11; Doc. 87 at 2-4.) In support of this position, they cite cases from an array of other jurisdictions that "have concluded that the

damages recoverable under the survival statute do not include an amount for the loss of the decedent's future earnings." (Doc. 73 at 10-11 & 11 n.1.)

This argument is unavailing. As an initial matter, Defendants' reliance on cases from jurisdictions outside Arizona is misplaced. "[A] federal court interpreting state law is bound by the decisions of the highest state court. . . . Where the state supreme court has not spoken on an issue presented to a federal court, the federal court must determine what result the state supreme court would reach based on state appellate court opinions, statutes, and treatises." *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1391 (9th Cir. 1994) (citations omitted). Here, Defendants haven't identified any decision by the Arizona Supreme Court (or, indeed, by any Arizona state court) adopting their position that future wages are unavailable in a survival claim under A.R.S. § 14-3310. Moreover, the Arizona Court of Appeals has specifically noted that "because survival statutes and the interpretation of them vary greatly from state to state, [it does] not find a survey of the law in other jurisdictions particularly enlightening in interpreting § 14–3110." *Quintero*, 212 P.3d at 877.

Given this backdrop, the proper place to begin the analysis is with the statutory text of A.R.S. § 14-3110. The plain language of the statute does not support Defendants' position. Notably, the statute only identifies one category of damages that is unavailable in a survival action—"damages for *pain and suffering*." *Id.* (emphasis added). This strongly suggests the Arizona Legislature didn't intend to exclude other categories of damages, like future economic damages. *Cf. TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.") (citation omitted); *City of Surprise v. Ariz. Corp. Comm'n*, 437 P.3d 865, 870 (Ariz. 2019) (Arizona courts follow "the interpretive canon[] *expressio unius est exclusio alterius*," under which "the expression of one item implies the exclusion of others"). Thus, as in *Quintero*, where the Arizona Court of Appeals allowed a punitive damage claim to be pursued in a survival action because the "survival statute does not preclude punitive damages," 212 P.3d at 878, the Court concludes that damages for future

economic losses may be recovered in a survival action because the survival statute does not expressly exclude such damages.

Defendants cite *Gandy v. United States*, 437 F. Supp. 2d 1085 (D. Ariz. 2006), for the proposition that "Arizona courts have held survival action loss of earnings must be limited to those incurred between the decedent's injury and death because to allow post-death recovery would be double-recovery with a wrongful death action." (Doc. 73 at 10.) *Gandy* did indeed come to this conclusion. But Defendants are mistaken in claiming that "Arizona courts" have so held—Defendants did not cite, and the Court is unaware of, any Arizona state court cases addressing this issue.

Moreover, the plaintiffs in *Gandy* were attempting to recover future-income damages *both* as part of the estate's survival action *and* as part of the beneficiaries' wrongful death action. *Id.* at 1089. These parallel claims created a risk of double recovery, and the *Gandy* opinion can be read as an attempt to avoid double recovery by funneling all of the future-income claims into a single cause of action. *Id.* at 1088 ("*To prevent double recovery under the wrongful death and survival statutes*, recovery for Decedent's loss of future earnings in the survival claim is limited to the time between her injury, September 9, 1999, to her death, May 22, 2005.") (emphasis added). In this case, however, there is no risk of double recovery—Wife and Mother have agreed not to "mak[e] claims for economic losses as part of their action for wrongful death." (Doc. 84 at 2.)

Finally, in addition to lacking any support in the statutory text or relevant state-court case law, Defendants' position also fails because it could lead to illogical results. Although double recovery is a legitimate concern where both survival and wrongful death claims are brought in the same case, it is unclear why the best way to address that concern is to arbitrarily decide that a claim for damages for future economic losses must be made under the wrongful death statute, rather than the survival statute. The consequences of this arbitrary rule are that defendants will often benefit when they kill, rather than injure, or when they kill those who were not supporting others at the time of their death.[3] For these

---

[3] *See generally Calhoun v. Yamaha Motor Corp., U.S.A.*, 40 F.3d 622, 639 n.31 (3d

- 6 -

reasons, some courts have expressly declined to adopt the rule proposed here by Defendants. *See, e.g.*, *Criscuola v. Andrews*, 507 P.2d 149, 150-51 (Wash. 1973) (en banc) (declining to "imply[] from the existence of a wrongful death act that all prospective losses were to be cut off in a survival action" and identifying other, less-arbitrary mechanisms for addressing "[t]he problem of prospective double compensation where actions are brought under both survival and wrongful death actions"); *Wheeler v. Carlton*, 2007 WL 9735706, *13-14 (E.D. Ark. 2007) (denying defendant's motion *in limine* to preclude decedent's estate from seeking future earnings and holding that any potential for double recovery could be addressed by "an appropriate instruction that the loss of future earning capacity (or earnings) of the decedent should be reduced by any overlapping awards of lost money contributions to the statutory beneficiaries"); *Jones v. Flood*, 716 A.2d 285, 290 (Md. Ct. App. 1998) (noting that, although Maryland follows a different approach, "there are a few states in which the damages in a survival action are measured by the post-death lost gross earnings less the amount that the decedent would have expended on the support of others and for the decedent's personal maintenance, reduced to present value"). There may be policy reasons for such a rule, but the policy decision should be left to the Arizona Legislature and not made in the first instance by this Court.

II. Whether The Claim For Future Economic Losses Is Too Speculative

In calculating economic damages, Plaintiffs' economic damages expert, Vocational Economist J. Matthew Sims ("Sims"), assumed that if Decedent had not died in the collision, he would have become a sixth grade "Social Science" teacher beginning in summer 2016. (Doc. 83-1 at 24.) In support of this assumption, Plaintiffs cite Wife's deposition testimony that (1) at the time of his death Decedent was teaching sixth grade

---

Cir. 1994) (the prohibition against recovery of future earnings in a survival action "appears to be quite suspect when the decedent is someone who is not employed, especially a child. A child does not typically support her parents and so loss of support damages will be negligible. A child's expected future earnings, however, may be considerable. Allowing for lost future earnings under such circumstances raises minimal risk of duplicative recovery. In our view, to deny loss of future earnings under such circumstances gives a windfall to potential defendants.").

social studies; (2) Decedent was awarded his Master's Degree in Elementary Education posthumously; (3) Decedent would have been immediately certified to teach in Arizona after completing his student teaching and presenting his diploma to the Arizona Department of Education; and (4) the window for applying for teaching positions the following year had not yet opened. (*Id.* at 15-21.)

Defendants raise several objections to Sims's analysis. First, Defendants contend that Wife lacked foundation regarding statements three and four, above. (Doc. 88 at 2.) Second, Defendants also highlight the undisputed facts that, at the time of his death, (1) Decedent had not yet completed his student teaching or the follow-up classwork for his degree; (2) Decedent had not yet applied for any jobs; and (3) Decedent was not employed. (Doc. 74 at 7.) Given these undisputed facts, Defendants more broadly argue that the "claims regarding the amount of decedent's future estate and earnings are not supported by any evidence," as Sims had no basis to "assume that if not for this incident, [Decedent's] new new career would have begun in the summer of 2016." (Doc. 73 at 11, citing Doc. 74-22 at 3.)

"[F]uture lost wages are an appropriate measure of damages under Arizona law." *Lewis v. N.J. Riebe Enterprises, Inc.*, 825 P.2d 5, 18 (Ariz. 1992). "Once the right to damages is established, uncertainty as to the amount of damages does not preclude recovery." *Id.* Importantly, "[i]n loss of future income calculations, some assumptions about the future are required." *Rascon v. Brookins*, 2018 WL 739696, *4 (D. Ariz. 2018). Where the "assumptions ha[ve] a basis in fact," "[a]ssessing their accuracy and reliability [is] a question of fact for the jury." *Cty. of La Paz v. Yakima Compost Co.*, 233 P.3d 1169, 1187 (Ariz. Ct. App. 2010); *see also Rascon*, 2018 WL 739696 at *4 ("Here, Dr. Smith clearly identifies his assumptions that Sanchez would finish his CDL training and obtain employment in that area by 2014. The accuracy of these assumptions and whether Dr. Smith could project Sanchez's future earnings from those assumptions is a question better left to the jury. 'Vigorous cross-examination' and 'presentation of contrary evidence' during trial is the appropriate method for such a determination.") (citation omitted).

Here, the assumption that Decedent would be working as a full-time teacher had a basis in fact. At the time of his death, Decedent was student teaching and would have been close to graduating, evidenced by the fact that he was awarded his Master's Degree in Elementary Education posthumously. (Doc. 83-1 at 15-18.) *Rascon* is instructive. There, the court declined to exclude an expert's testimony on economic loss where that expert assumed the plaintiff would finish his Commercial Driver's License training and obtain employment as a full-time truck driver. 2018 WL 739696105 at *4-5. Defendants have not presented any evidence disputing Wife's statement that Decedent was planning to start a teaching job using the degree he was seeking. (Doc. 83-1 at 15-16.) Accordingly, the Court disagrees with Defendants that the Estate's claim for future earnings is too speculative to survive summary judgment.[4]

III. Proper Plaintiff In The Wrongful Death Action

Although Defendants do not raise this issue, the Court feels compelled to address it. In Arizona, there can only be one plaintiff in a wrongful death action. *Wilmot v. Wilmot*, 58 P.3d 507, 511 (Ariz. 2002) ("The text of the wrongful death statute contemplates that claims by all statutory beneficiaries be consolidated in a single action."); *Nunez v. Nunez*, 545 P.2d 69, 73 (Ariz. Ct. App. 1976). "[T]he statutory plaintiff represents all other beneficiaries who have a 'legal right . . . to be compensated for their loss resulting from the victim's death.'" *Wilmot*, 58 P.3d at 511 (citation and emphasis omitted). In such a case, "there is 'one judgment, the proceeds of which are held by the statutory plaintiff as trustee for the persons on whose behalf the suit was brought.'" *Id.* (quoting *Nunez*, 545 P.2d at 73) (emphasis omitted).

In this case, both Mother and Wife have asserted wrongful death claims. (Doc. 1-2.) Yet for the reasons discussed above, it appears that only one of them may assert such a claim. Rather than unilaterally select a solution, the Court will order the parties to meet and confer about this issue. One possible outcome of the meet-and-confer process would

---

[4] The Court notes that Defendants have not brought a separate *Daubert* motion to exclude the testimony of Sims.

be for the parties to stipulate to Plaintiffs' filing of an amended complaint so that only one Plaintiff is asserting a wrongful death claim on behalf of both statutory beneficiaries. Alternatively, if the parties disagree with the Court's analysis concerning *Wilmot* and *Nunez*, they should file supplemental briefing explaining this disagreement. The Court will leave it to the parties to decide how they'd like to proceed.

Accordingly, **IT IS ORDERED** that:

1. Defendants' motion for partial summary judgment (Doc. 73) is **denied**;
2. Plaintiffs' claims for negligent supervision, negligent retention, negligent maintenance, and punitive damages are **dismissed with prejudice** pursuant to Plaintiffs' stipulation;
3. Plaintiffs are precluded from asserting any claim at trial premised on a theory of negligent hiring or negligent training;
4. Plaintiffs are precluded from seeking the following two categories of damages at trial: (a) any claim for damages based upon Decedent's pain and suffering, and (b) any claim for the Decedent's future wages asserted by Mother or Wife as part of a wrongful death action; and
5. The parties must meet and confer regarding the proper Plaintiff (or Plaintiffs) in the wrongful death action and either stipulate to Plaintiffs' filing of an amended complaint or file supplemental briefing on this issue by **June 4, 2019**.

Dated this 20th day of May, 2019.

Dominic W. Lanza
United States District Judge