**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Zandra Manion, et al., | No. CV-17-03262-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Ameri-Can Freight Systems Incorporated, et al., | |
| Defendants. | |

The Final Pretrial Conference in this case is scheduled for August 26, 2019. (Doc. 91.) In anticipation of trial, the parties have filed 10 motions in limine. (Docs. 97, 99-107.) Having reviewed those motions and the responses thereto, the Court hereby rules as follows. The parties will be free at the Pretrial Conference to present additional argument concerning any of these rulings and attempt to convince the Court to change its mind.

I. <u>Plaintiff Blyler's Motion re: Post-Separation Sexual Relationships (Doc. 97)</u>

Plaintiff Lisa Blyler seeks the preclusion of evidence that she engaged in sexual relationships with two other men after separating from Johnathan Blyler ("the Decedent"). (Doc. 97.) She contends such evidence is irrelevant because "[w]hile the fact that Lisa Blyler may have begun dating after her separation from Johnathan Blyler may be relevant to a determination of damages, whether she engaged in sex while dating is not relevant." (*Id.* at 2.) She further contends that such evidence should be excluded under Rule 403 because it would be unfairly prejudicial and likely to inflame the jurors. (*Id.* at 2-3.) Finally, she contends the potential for juror confusion is exacerbated by the fact that she is

suing in two different capacities in this case—statutory beneficiary and personal representative of the Decedent's estate—and the jurors may find it difficult to consider the disputed evidence only with respect to her claim as a beneficiary. (*Id.*)

In their response, Defendants argue the disputed evidence is relevant because Lisa Blyler is seeking damages based on the loss of "love, affection, companionship, protection, and guidance from Johnathan Blyler" and the other courts have recognized that "[w]hen claiming the loss of a relationship, the extent and nature of that relationship is essential to the claims." (Doc. 115 at 2, quoting Doc. 115-1 at 7.) They continue: "If the parties were estranged, such that Plaintiff was dating or having sexual relationships outside of a previously monogamous relationship, this goes to the heart of Plaintiff's damages and is likely the most important and relevant information for a jury to evaluate a marital relationship." (*Id.*) Defendants also contend the disputed evidence isn't unfairly prejudicial and that any risk of confusion stemming from Lisa Blyler's dual role as beneficiary/representative can be eliminated by forcing Plaintiffs to stick with a single representative in the wrongful death claim. (*Id.* at 3-4.)

This motion will be denied. Plaintiff Blyler has placed the nature of her relationship with Decedent at issue by asserting what is effectively a claim for loss of consortium. Defendants are therefore entitled to present evidence bearing on that issue. A rational juror could conclude that an estranged spouse who was engaging in sexual relationships with others is not entitled to the same range of loss-of-consortium damages as a spouse who had merely separated from her partner, and perhaps engaged in some casual dating, but remained monogamous. Indeed, Arizona law specifically recognizes that "[c]onsortium includes . . . in the marital relationship, sexual relations" and that "[t]he purpose of a consortium claim is to compensate for the loss of" this, along with other elements. *Barnes v. Outlaw*, 964 P.2d 484, 487 (Ariz. 1998) (quotation omitted).

Nor does Rule 403 preclude the admission of this evidence. Exclusion under Rule 403 is "an extraordinary remedy to be used sparingly." *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995) (citation omitted). "Under the terms of the rule, the danger of

1 prejudice must not merely outweigh the probative value of the evidence, but *substantially* outweigh it." *Id.* Here, the relevance of the disputed evidence is more than marginal, given the nature of Plaintiff Blyler's damage claim, and it seems unlikely that a jury of adults would be inflamed to the point of irrationality by the presentation of evidence that a person who had separated from her spouse was sexually active. Finally, any risk of confusion stemming from Plaintiff Blyler's role as both statutory beneficiary and personal representative can be addressed through jury instructions, if requested by the parties.

II. <u>Plaintiffs' Motion re: Inadmissible Hearsay Of Unknown Witnesses (Doc. 104)</u>

During his deposition, Defendant Steven Robertson ("Robertson")—the driver of the semi-truck that collided with Decedent's vehicle—testified that an unknown witness stopped at the scene of the collision and they "had a conversation . . . about whether [Decedent's] Jeep had its lights on and/or whether [Decedent's] Jeep was completely stopped on the roadway." (Doc. 104 at 2.) Plaintiffs move to exclude any evidence concerning this alleged conversation at trial because it is hearsay and because Defendants' experts did not rely on it and could not reasonably have relied on it. (*Id.* at 2-3.)

In their response, Defendants "do not object to the preclusion of testimony made by unknown witness to Defendant Steven Robertson." (Doc. 108 at 1.) Accordingly, this motion will be granted.

III. <u>Plaintiffs' Motion re: Hearsay Crash Report Witness Statement (Doc. 105)</u>

The police report in this case states that a witness named Mario Duran witnessed the accident and provided a written statement to the police officer stating that he "did not see any lights or hazards on [Decedent's] Jeep." (Doc. 105 at 2.) However, the parties were unable to locate or depose Mr. Duran during the discovery process in this case. (*Id.* at 2.) Thus, Plaintiffs move to preclude, on hearsay grounds, any evidence or argument concerning "statements made by Mario Duran in the Arizona Crash Report." (*Id.* at 3-4.)

In their response, Defendants "do not object to the preclusion of hearsay statements in the Crash Report which were attributed to other persons. This includes statements made by . . . Mario Duran . . . ." (Doc. 109 at 1-2.) Accordingly, this motion will be granted.

1  IV.  <u>Plaintiffs' Motion re: Decedent Being Sleepy Or Sleeping At The Wheel (Doc. 106)</u>

During discovery in this case, Defendants propounded requests for admission that, in a nutshell, asked Plaintiffs to admit Decedent had been awake for about 21 hours straight at the time of the collision. (Doc. 106 at 2.) Based on these requests (which Plaintiffs denied, because they "lack[] information to know [Decedent's] sleeping habits during the time period in question"), Plaintiffs suspect that Defendants will attempt to argue at trial that Decedent fell asleep at the wheel before the fatal collision. (*Id.*) Thus, Plaintiffs move under Rules 403, 602, and 701 to exclude any evidence or argument that Decedent "was sleepy or fell asleep at the wheel just prior to the collision at issue in this matter," arguing that it would be "pure speculation" to suggest Decedent was asleep. (*Id.* at 2-4.)

In their response, Defendants state they have documentary evidence (in the form of text messages) showing that Decedent was awake by 5:30 am on the day before the accident and have other evidence showing that Decedent engaged in additional activities throughout that day and evening. (Doc. 116 at 2.) They contend they "seek only to provide evidence to the jury that the decedent had not slept for twenty plus hours at the time of the accident" and that such evidence is relevant because "Defendants' main defense in this matter is comparative fault upon the Decedent . . . [and] [a] regular lay person can review the evidence at hand and determine if a party was fatigued and whether it impacted their driving under the totality of the evidence." (*Id.* at 2-3.)

Plaintiffs' motion will be denied. Defendants have evidence that tends to suggest Decedent had been awake for 21 hours at the time of the collision. It does not require expert testimony to conclude that a person who's been awake for 21 hours may be sleepy and, thus, less attentive as a driver—this is a common-sense conclusion that a juror could draw based on his or her own personal experience as a human being. And because comparative fault is one of the key disputed issues in the case, evidence tending to suggest that Decedent had been awake for 21 hours at the time of the collision is both relevant and not subject to exclusion under Rule 403.

…

1  V.   Plaintiffs' Motion re: Alcohol Consumption (Doc. 107)

2          Plaintiffs seek to preclude any evidence or argument concerning Decedent's use of
3   alcohol before the collision. (Doc. 107.) They acknowledge that Decedent's autopsy
4   revealed he had an alcohol concentration in his blood of 0.03 percent at the time of his
5   death, but they contend that Arizona law creates a presumption of that a driver is not
6   intoxicated if the driver's blood alcohol level was 0.05 percent or less and Defendants
7   "have disclosed no witness, expert, or other evidence to overcome the presumption."
8   (Doc. 107 at 2.) Thus, they contend any evidence or argument concerning Decedent's
9   alcohol use would be unfairly prejudicial under Rule 403. (*Id.* at 3.)

10         In their response, Defendants begin by noting that the question whether Decedent
11  was impaired and/or intoxicated is highly relevant, because it goes to their comparative
12  fault defense. (Doc. 117 at 2-3.) They further contend that, although Arizona law creates
13  a presumption against intoxication when the driver's blood alcohol level is 0.05 percent or
14  less, this presumption can be overcome and they intend to attempt to overcome it by
15  presenting other evidence (in addition to the blood-test evidence) showing that Decedent
16  was impaired at the time of the collision. (*Id.* at 3 ["[T]he jury is allowed to consider and
17  determine whether or not decedent was impaired at the time of the incident by taking the
18  testimony of eye witnesses and the medical examiner regarding alcohol consumption and
19  blood alcohol content."].) They also note that the Arizona jury instruction creating the
20  presumption "anticipates the [blood alcohol] evidence being admissible; not removing the
21  evidence from the jury's consideration. If the evidence were not admissible, then the jury
22  instruction would not be there in the first place." (*Id.* at 4.)

23         Plaintiffs' motion will be denied. Arizona law does not erect a hard-and-fast rule
24  that evidence of alcohol consumption is inadmissible unless the driver's blood alcohol level
25  was above 0.05 percent at the time of the collision. To the contrary, Arizona law merely
26  enacts a presumption against intoxication in such cases but leaves it to the jury to decide,
27  based on all of the evidence, whether the presumption has been overcome. *State v. Superior*
28  *Court, In And For Pima County*, 732 P.2d 218, 220 (Ariz. Ct. App. 1986) ("Nor do we

agree with DeWolf's argument that since the legislature created a statutory presumption, other evidence must be rejected. Both the presumptions and 'other competent evidence' can be considered by the jury, which may afford such weight as it deems proper to any evidence regarding the defendant's condition. Just as a defendant is entitled to present evidence to overcome the statutory presumption of impairment as it relates to the charge of driving under the influence of intoxicating liquor, so too is the state entitled to present evidence on that issue."). *See also* Arizona RAJI, Negligence 3, note 2 ("A.R.S. § 28-1381(G) creates a statutory presumption. This statutory presumption can be rebutted, but it does not vanish with presentation of evidence to the contrary. The weight to be given to this statutory presumption, and to all other competent evidence, is for the jury to decide.") (citations omitted). The presumptions of intoxication are relevant because Arizona law provides that "[i]n any civil action, the finder of fact may find the defendant not liable if the defendant proves . . . the decedent was under the influence of an intoxicating liquor . . . and as a result of that influence the . . . decedent was at least fifty per cent responsible for the accident or event that caused the . . . decedent's harm." A.R.S. § 12-711.

Here, Defendants hope to present eyewitness testimony that, when coupled with the autopsy results and the medical examiner's testimony, may persuade the jury to conclude Decedent was, in fact, intoxicated at the time of the collision. Rule 403 does not require the exclusion of the alcohol-use evidence in these circumstances. *Cf. Belliard v. Becker*, 166 P.3d 911, 912-13, 15-16 (Ariz. Ct. App. 2007) (holding that "the trial court erred by concluding the evidence of Becker's consumption of alcohol prior to the accident was irrelevant," even though "[Becker's] breath test result of .031 created the presumption that he 'was not under the influence of intoxicating liquor' under Arizona [law]," because "evidence of Becker's drinking prior to the accident may be a sufficient basis on which the jury could conclude that Becker behaved so recklessly as to be subjected to punitive damages").

VI. <u>Defendants' MIL No. 1: Hearsay Statements (Doc. 102)</u>

In this motion, Defendants seek to exclude various categories of what they

characterize as inadmissible hearsay evidence. (Doc. 102.) First, Defendants seek to exclude certain statements that Decedent made to Plaintiffs Blyler and Manion about his future employment plans and his intention to "get[] back together" with Plaintiff Blyler. (*Id.* at 2-3.) They contend such statements are inadmissible because they don't qualify as "dying declarations" or fall within any other hearsay exceptions. (*Id.*) Second, Defendants seek to exclude any witness statements contained within the police report, including any statements attributable to "Steven Robertson, Mario Duran, Edwin Gonzalez, Maritza Martin, Tracey Robertson, Lisa Blyler, Arturo Martinez, Marty Smith, and all statements made by the investigating police officers." (*Id.* at 3.) Defendants also move to exclude the "Driver/Vehicle Examination Report" because it would only be relevant to Ameri-Can's negligence and Plaintiffs have agreed to dismiss their independent negligence claim against Ameri-Can. (*Id.*) Finally, Defendants move to exclude an array of other pieces of evidence, including various videos, interview transcripts, and expert reports. (*Id.* at 4.)

In their response, Plaintiffs argue, as an initial matter, that Defendants have abused the motion in limine process by attempting to exclude "at least 3 very separate and distinctive categories of information" in a single motion. (Doc. 110 at 2.) As for the first category (hearsay statements by Decedent), Plaintiffs generally note that various hearsay exceptions and exclusions (present sense impression, existing mental/emotional/physical condition, statement of family history, reliance by expert, general trustworthiness) "may apply" to the statements in question. (*Id.*) As for the second category (statements in police report), Plaintiffs "generally agree that the police report should not be admitted at trial because it is hearsay with no exceptions that apply" but argue the portions of the report that include Defendant Robertson's statements may come in as party-opponent admissions, that the report may be used to refresh certain witnesses' recollection, and that the police officer's own observations may be admissible as present sense impressions. (*Id.* at 2-3.) As for the third category (other statements), Plaintiffs contend "[t]his category and the accompanying argument are so vague to Plaintiffs that they have a difficult time in responding to it." (*Id.* at 3.)

1    The Court generally shares Plaintiffs' frustration with Defendants' approach and
2    will therefore deny the motion without prejudice. (Defendants remain free, at trial, to raise
3    a contemporaneous hearsay objection to any piece of evidence they believe is
4    inadmissible.) The difficulty here is that Defendants identified, in scattershot fashion,
5    dozens of different statements and documents that may trigger the hearsay rules and then
6    broadly moved to exclude all of them. Yet, as Plaintiffs correctly point out, some of
7    Defendants' arguments are obviously wrong. For example, the portions of the police report
8    that contain Defendant Robertson's own statements aren't subject to exclusion under the
9    hearsay rules because such statements qualify as party-opponent admissions. Although it
10   might be possible to carefully comb through Defendants' motion, identify every statement
11   and document they purport to challenge, and then conduct a hearsay analysis as to each
12   one, the Court declines to do so. The point of the motion in limine process is to simplify
13   matters for trial, not create needless complication.

VII.    Defendants' MIL No. 2: Photos Of Decedent's Body And "Other Non-Probative Evidence" (Doc. 103)

In this motion, Defendants move to exclude various pieces of evidence. First, Defendants seek to preclude Plaintiffs "from publishing or exhibiting to the jurors photographs of the body of [Decedent] at the scene of the accident and any autopsy photographs of [Decedent] taken by the Medical Examiner." (Doc. 103 at 1-2.) They contend such photographs are subject to exclusion because they are "irrelevant, unduly prejudicial and cumulative" and "would unfairly inflame the jurors' emotions and distract them from the actual disputed issues in the case." (*Id.*) They further contend that, although the photos might have some theoretical relevance in showing that Decedent suffered a fatal injury and/or in demonstrating the final resting place of the vehicle, the former issue isn't disputed and the latter can be proved by other photos. (*Id.*) Second, Defendants seek to exclude "the obituary written by decedent's estranged wife," arguing that it "provides no probative value," "is not directed at any element of the cause of action," and "would surely have a substantial, unfair prejudicial impact" on the jury. (*Id.* at 3.) Third, Defendants

seek to exclude "evidence pertaining to the decedent's pre-mortem pain and suffering," arguing that it is irrelevant to the wrongful death claim. (*Id.* at 4.) Fourth, Defendants seek to preclude Plaintiffs from "present[ing] witness accounts of the events that they did not see or were not aware of." (*Id.*) Fifth, Defendants seek to exclude Decedent's "honor roll certificates, achievement awards, random photographs, academic honors, and scholarship awards from 1989 to 1992," arguing that such evidence has "no relevance to Plaintiffs' claims for economic damages, no bearing on defendants' alleged negligence, lack any probative value, and are hearsay." (*Id.*)

In their response, Plaintiffs argue that (1) the post-mortem photos are admissible because Arizona law specifically "permits recovery not just for the fact of the decedent's death, but also for the manner in which the decedent dies to the extent the manner of death makes the experience more difficult for the survivor"; (2) the obituary is admissible because it helps show the "anguish, sorrow, stress, mental suffering, pain and shock Decedent's mother and spouse suffered as a result of Decedent's death" and is therefore "highly probative, but not overly prejudicial" on the issue of damages; (3) Plaintiffs don't intend to present evidence of pre-mortem pain and suffering; and (4) the certificates, awards, and cards "are not offered for the truth of the matter asserted but rather for their non-economic value to the people who loved Decedent." (Doc. 111 at 2-4.)

This motion will be granted in part and denied in part. First, Defendants' request to exclude the photographs of Decedent's body will be overruled. *Girouard v. Skyline Steel, Inc.*, 158 P.3d 255 (Ariz. Ct. App. 2007), makes clear that such photographs are potentially relevant and admissible in a wrongful death case: "[T]he Wrongful Death Act . . . permits a recovery not just for the fact of the decedent's death, but also for the manner in which the decedent dies to the extent the manner of death makes the experience more difficult for the survivor. . . . Thus, insofar as the manner of a decedent's death may have added to a wrongful death plaintiff's anguish resulting from the death, . . . it is highly relevant to the plaintiff's claim for damages." *Id.* at 259-60. Although Plaintiffs obviously cannot go overboard at trial and bombard the jury with a cumulative presentation of evidence on this

topic, the photographs will not be categorically excluded.

Second, Defendants' request to exclude the obituary will be granted. Such a document is filled with hearsay[1] and also raises significant concerns under Rule 403. Moreover, Plaintiffs can present evidence concerning the anguish, suffering, and pain they suffered as a result of Decedent's death by testifying and then being cross-examined. It is impossible, in contrast, to cross-examine an obituary.

Third, Defendants' request to exclude evidence of pre-mortem pain and suffering will be granted in light of Plaintiffs' non-opposition to it.

Fourth, Defendants' request to exclude various certificates, awards, and cards will be denied without prejudice—it is impossible to rule on such a broad request in a vacuum, without examining each individual document and being able to weigh the Rule 403 considerations in light of the other evidence that has separately been admitted.

VIII. Defendants' MIL No. 3: "Reptile Theory" Arguments (Doc. 99)

In this motion, Defendants ask the Court to preclude Plaintiffs "from commenting or presenting any evidence that Defendants refused to accept responsibility for the subject accident, urging the jurors to 'send a message,' to 'place themselves in the shoes' of the Plaintiffs, evidence or testimony as to Plaintiffs' financial condition, and general or non-specific questions and arguments related to 'needlessly endangering other people' and/or creating 'hazards' to the general public." (Doc. 99 at 2.) They contend that such arguments are improper under Rules 401 and 403 and have been "infamously endorsed by a non-lawyer psychologist . . . whose text has been used as a playbook for modern plaintiff attorneys." (*Id.* at 2-3.)

---

[1] *See, e.g., United States v. Taylor*, 2011 WL 13195944, *3 (E.D. Va. 2011) ("[T]he court sustains defense counsel's objection to the obituary because it is clear that the obituary was introduced to prove the truth of a fact discussed therein, and no hearsay exception is applicable."); *Barbee v. Barbee*, 2010 WL 4132766, *6-7 (Tex. Ct. App. 2010) (concluding that "the trial erred in admitting into evidence two obituaries that had been published in on online newspaper" because "the obituaries are hearsay"). Although some courts have suggested that certain portions of an obituary may be admitted under the so-called "pedigree exception" to the hearsay rules, which is codified at Federal Rule of Evidence 803(19), *see, e.g., In re Estate of Derricotte*, 744 A.2d 535, 539-40 (R.I. 2000), it doesn't appear that Plaintiffs wish to introduce the obituary in this case for the limited purpose of proving they were related to Decedent (a fact that doesn't appear to be disputed).

In their response, Plaintiffs argue that Defendants' motion is improper because motions in limine should be used to exclude evidence, not arguments. (Doc. 112 at 2.) Plaintiffs also contend the specific types of arguments identified in Defendants' motion are permissible and appropriate. (*Id.* at 2-3.)

Defendants' motion will be denied without prejudice. Although some of the specific lines of argument identified in the motion may be impermissible, the motion is too broad and hypothetical to provide the springboard for any sort of meaningful pretrial ruling by the Court. As another court aptly put it, when denying a similar "reptile theory" motion in limine:

> Defendants give the Court nothing objective to consider in deciding what language, phrases or evidence the Court should deem improper. Defendants complain about amorphous and ill-defined concepts rather than specific evidence which they believe Plaintiff will introduce or arguments which they believe Plaintiff might make. The Court is being asked to rule on abstract and generalized hypotheticals. In the absence of something more specific, the Court is unable and unwilling to grant their motion.

*Baxter v. Anderson*, 277 F. Supp. 3d 860, 863 (M.D. La. 2017). *See also Walden v. Md. Casualty Co.*, 2018 WL 6445549, *3 (D. Mont. 2018) ("The Court denies the motion as to the so-called reptile theory. The Court will not categorically prohibit a form of trial strategy, particularly given the absence of any reason to believe that reptile theory is likely to rear its head here (or that the Court would be able to identify it if it did)."); *Dorman v. Anne Arundel Med. Ctr.*, 2018 WL 2431859, *6 (D. Md. 2018) ("[T]his motion is premature and presents vague challenges to Plaintiffs' style of argument rather than to any evidence that Plaintiffs intend to introduce. At this time, the Court does not find a need to classify any potential future argument as 'reptilian' or inappropriate, especially because counsel's arguments to the jury are permitted a significant degree of latitude."); *Bunch v. Pacific Cycle, Inc.*, 2015 WL 11622952, *2 (N.D. Ga. 2015) ("To the extent that Defendant seeks to preclude Plaintiffs from engaging in the 'Reptile' tactics, this request is unnecessary and overly broad. Certainly, if Plaintiffs veer into those tactics at trial, the Court can and will address the issue at the appropriate time.").

IX. <u>Defendants' MIL No. 4: Lay Witness Testimony On Expert Topics (Doc. 101)</u>

In this motion, Defendants move to preclude Plaintiffs from (1) eliciting testimony from lay witnesses concerning the cause of Decedent's death and/or the cause of the accident itself and (2) eliciting testimony from Plaintiff Lisa Blyler "as to the hiring and retention practices of the Arizona and/or Ohio school districts." (Doc. 101 at 2-4.) Defendants contend the former would be improper because only experts may offer opinions about causation and the latter would be improper because Lisa Blyler's employment with the Arizona Department of Education only involves "budgeting, vendor management, and finance" and she thus doesn't have a foundation to testify about hiring practices and procedures. (*Id.*)

In their response, Plaintiffs argue that Defendants' request to exclude lay witness testimony on causation is puzzling because Defendants concede "it is undisputed that decedent died as a result of this accident." (Doc. 113 at 2-3, quoting Doc. 101 at 3.) Plaintiffs surmise that Defendants' intent in filing the motion was to preclude them from testifying about their subjective understanding of what occurred during the accident and that such testimony is admissible under *Girouard*. (*Id.* at 3-4.) As for Lisa Blyler's testimony, Plaintiffs clarify that she will not be opining about the hiring and retention practices of Arizona and Ohio schools. (*Id.* at 4.)

Defendants' motion will be granted in part and denied in part. First, the Court shares Plaintiffs' confusion about what, exactly, the first part of the motion was attempting to exclude. In any event, to the extent Defendants were trying to exclude Plaintiffs from testifying about their subjective understanding of what occurred during the accident, the Court tends to agree that such testimony will be admissible under *Girouard*. Defendants remain free to make a more targeted, contemporaneous objection during trial to any specific testimony they feel is improper. Second, because Plaintiffs concede that Lisa Blyler won't be offering any testimony concerning "the hiring and retention practices of the Arizona and/or Ohio school districts," to the extent Defendants' motion seeks to exclude such testimony, it will be granted.

X. Defendants' MIL No. 5: Limiting Evidence (Doc. 100)

In this motion, Defendants identify *fourteen* different categories of evidence they believe should be excluded or limited. (Doc. 100 at 2-3.) Although the body of the motion is largely devoid of legal argument or case citations, Defendants attempt to cram their arguments into a series of single-spaced footnotes. (*Id.* at 2-3 nn.1-7.)

In their response, Plaintiffs make a valiant attempt to address Defendants' various arguments. (Doc. 114.)

This motion will be denied without prejudice. The motion appearing at Docket No. 100 represents a transparent attempt to subvert the limitations on motions in limine that were set forth in the order setting the Final Pretrial Conference. (Doc. 91 at 2-3 ["Each party may file no more than five motions in limine. . . . The motions and responses must be concise and must not exceed three (3) pages in length."].)

\*\*\*

Accordingly, **IT IS ORDERED** that:

(1) Plaintiff Blyler's Motion re: Post-Separation Sexual Relationships (Doc. 97) is **denied**;

(2) Plaintiffs' Motion re: Inadmissible Hearsay Of Unknown Witnesses (Doc. 104) is **granted**;

(3) Plaintiffs' Motion re: Hearsay Crash Report Witness Statement (Doc. 105) is **granted**;

(4) Plaintiffs' Motion re: Decedent Being Sleepy Or Sleeping At The Wheel (Doc. 106) is **denied**;

(5) Plaintiffs' Motion re: Alcohol Consumption (Doc. 107) is **denied**;

(6) Defendants' MIL No. 1: Hearsay Statements (Doc. 102) is **denied**;

(7) Defendants' MIL No. 2: Photos Of Decedent's Body "And Other Non-Probative Evidence" (Doc. 103) is **granted in part and denied in part**;

(8) Defendants' MIL No. 3: "Reptile Theory" Arguments (Doc. 99) is **denied**;

(9) Defendants' MIL No. 4: Lay Witness Testimony On Expert Topics (Doc.

- 13 -

101) is **granted in part and denied in part**; and

    (10)    Defendants' MIL No. 5: Limiting Evidence (Doc. 100) is **denied**.

Dated this 7th day of August, 2019.

                                              Dominic W. Lanza
                                          United States District Judge