WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Zandra Mannion, et al., | No. CV-17-03262-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Ameri-Can Freight Systems Incorporated, et al., | |
| Defendants. | |

The trial in this matter began on January 14, 2020. During the charge conference, the Court rejected a proposed jury instruction, submitted by Plaintiffs, that would have asked the jury to decide whether Defendants had engaged in the spoliation of certain pieces of evidence and permitted the jury to apply an adverse inference against Defendants if it made such a finding. This order sets forth the Court's four reasons for rejecting the proposed instruction.

## BACKGROUND

This case was removed to federal court in September 2017 and initially assigned to a different judge. (Doc. 1.) In November 2017, the Court issued the Rule 16 scheduling order. (Doc. 20.) Among other things, the scheduling order set a deadline of December 28, 2018 for the completion of discovery, set forth a specific procedure for resolving discovery disputes, and made clear that any discovery disputes had to be raised and resolved by the December 28, 2018 deadline. (*Id.* at 3-4.)

The docket reflects that the parties did not bring any discovery disputes to the

Court's attention during the 13-month discovery period. (Docs. 21-61.)

In February 2019, after the discovery deadline had elapsed, Defendants filed a motion for summary judgment and both sides filed *Daubert* motions. (Doc. 70-73.) None of those motions, or any of the responses and replies thereto (Docs. 75-77, 79-82, 84), raised any concerns regarding Defendants' non-production or spoliation of evidence. (Doc. 82, 84.)

On July 17, 2019, the parties filed an array of motions *in limine*. (Docs. 97, 99-107.) None of those motions raised any concerns regarding Defendants' non-production or spoliation of evidence.

On August 21, 2019, the parties submitted their proposed jury instructions. (Doc. 124.) One of the proposed instructions, entitled "Stipulated Instruction 13," addressed the subject of spoliation. (*Id.* at 16.) It provided: "Plaintiffs . . . allege Defendants . . . failed to preserve [seven specified] items of evidence . . . . If you find that Defendants . . . failed to preserve evidence, without a reasonable explanation for such failure, you may, but are not required to, assume that the evidence would have been unfavorable to Defendants . . . ." (*Id.*) As authority for the proposed instruction, the filing cited Arizona (not federal) law. (*Id.*)

On August 21, 2019, the parties also submitted their Joint Proposed Final Pretrial Order. (Doc. 125.) Unlike the proposed jury instructions, which seemed to suggest that Defendants had agreed the jury could be instructed on the issue of spoliation, this filing made clear that Defendants were not in agreement with Plaintiffs on this issue. Specifically, the filing identified spoliation as one of the disputed "issues of law to be determined" and described Defendants' position as follows: "This issue is irrelevant and distracts from the actual matters at issue. Plaintiffs were not disadvantaged in any way. This is not an issue for trial." (*Id.* at 21-22.) Additionally, in the final section of the Joint Proposed Final Pretrial Order, the parties jointly certified that "[a]ll discovery has been completed" and that "[t]he parties have made all of the disclosures required by the Federal Rules of Civil Procedure." (Doc. 125 at 72.)

On August 26, 2019, the Court held the Final Pretrial Conference. (Doc. 127.) During the conference, the Court noted the discrepancy between the proposed jury instructions and Final Pretrial Order and stated: "[S]o I guess the way I'm understanding this is, the parties aren't asking the Court to make any sort of threshold determination on this, everybody agrees that this jury instruction should be given. And both parties can present whatever facts and argument they want to the jury on this. That's my understanding based on the jury instructions in the pretrial order, but if that's incorrect, let me know."[1] In response, Plaintiffs' counsel stated: "I think you got it correct." (*Id.*) However, Defendants' counsel clarified that "[t]his was stipulated to in . . . case the evidence was allowed in. But [at] this point we do think there's a dispute as to whether the evidence should be allowed in and whether it is a real issue." (*Id.*) Based on this clarification, the Court declined to make any definitive pre-trial rulings about what spoliation-related evidence would be admitted at trial or whether a spoliation instruction would be given.

On January 7, 2020, Defendants filed a "Trial Brief on Spoliation." (Doc. 145.) After discussing the allegedly missing pieces of evidence, it concluded by stating that "Plaintiffs have failed to establish the requisite proof to proceed with a spoliation claim" and asking the Court to "preclude Plaintiffs from making spoliation arguments to the jury . . . and preclude Stipulated Jury Instruction 13 from the jury instructions at trial." (*Id.* at 8.)

On January 7, 2020, Plaintiffs filed their own trial brief. (Doc. 149.) One of the issues it addressed was whether Plaintiffs' counsel would be permitted to display certain exhibits during his opening statement. (*Id.* at 2-3.) Some of the exhibits related to Plaintiffs' spoliation allegations. (*Id.*)

On January 9, 2020, the Court held a telephonic hearing with the parties. (Doc. 155.) During this hearing, Plaintiffs' counsel argued he should be allowed to display the spoliation-related exhibits during his opening statement because "that [spoliation] instruction as far as I know is still planning on being given. I know that the defendants

---

[1] During this discussion, the Court also raised questions about whether the proposed instruction was improperly based on state rather than federal law.

have filed their own brief regarding these things, but we do have to prove that evidence was spoiled in order to sustain that instruction." Based on this explanation, the Court ruled that Plaintiffs' counsel would be allowed to display the exhibits in question.[2]

On January 14, 2020, trial began. During his opening statement, Plaintiffs' counsel asserted that Defendants had failed to preserve and produce a variety of pieces of evidence, including the log books of Defendant Tracey Robertson.

Midway through trial, Defendants' counsel informed the Court and Plaintiffs that Ms. Robertson's log books had been found. Defendants' counsel explained that the log books had been in the possession of Defendant Ameri-Can Freight Systems, Inc. ("Ameri-Can") throughout the case, that previous efforts by Ameri-Can personnel to locate the log books had been unsuccessful, that Ameri-Can had recently changed some of its personnel responsible for maintaining corporate records, and that the new personnel had somehow been able to locate the log books. (*See also* Doc. 174 at 2.)

On January 17, 2020, the Court invited the parties to submit supplemental briefing concerning the spoliation instruction.

On January 20, 2020, the parties filed supplemental briefs. (Docs. 172, 174.)

**ANALYSIS**

I. Preservation

Before addressing the merits, it is necessary to address whether Defendants' pretrial conduct caused them to waive or forfeit their ability to oppose Plaintiffs' request for a spoliation instruction.

As noted, on August 21, 2019, the parties submitted an array of joint filings in anticipation of the Final Pretrial Conference. In the joint jury instructions, Defendants appeared to stipulate that Plaintiffs' proposed spoliation instruction could be given at trial—it was entitled "Stipulated Instruction 13" and was not included in the section of the

---

[2] During a later portion of the hearing, the Court mistakenly stated that "everybody's already stipulated there's going to be a jury instruction on it [spoliation]." In response, Defendants' counsel immediately (and correctly) pointed out that "I don't remember it being that we were definitely giving them that charge."

- 4 -

filing where the parties identified the disputed instructions. (*Compare* Doc. 124 at 16 *with* Doc. 124 at 20-21.) However, in the parties' simultaneously-filed Joint Proposed Final Pretrial Order, spoliation was identified as a disputed issue, with Defendants characterizing it as "irrelevant" and "not an issue for trial." (Doc. 125 at 21-22.) Additionally, Plaintiffs certified at the conclusion of that filing that "[a]ll discovery has been completed" and "[t]he parties have made all of the disclosures required by the Federal Rules of Civil Procedure." (Doc. 125 at 72.) Given these contradictions, the Court declined to make a definitive ruling about the proposed instruction during the Final Pretrial Conference and invited the parties to submit further briefing.

Defendants accepted this invitation and submitted a spoliation-related trial brief a few days before trial. (Doc. 145.) This brief correctly stated (unlike the stipulated jury instruction) that Plaintiffs' request for an adverse inference instruction was governed by federal law. (*Id.* at 2.) It also concluded by asking the Court to decline to instruct the jury on spoliation. (*Id.* at 8.)

Given this backdrop, the Court concludes that Defendants did not waive or forfeit their objection to Plaintiffs' proposed jury instruction on spoliation. Although Defendants injected needless confusion into the proceedings by allowing the instruction to be labeled a "Stipulated" submission in the parties' joint filing in August 2019, Defendants' statements in contemporaneous filings, during the Final Pretrial Conference, in their trial brief, and during the final pretrial status hearing all made clear that they were, in fact, disputing the appropriateness of the instruction.[3]

…

…

…

---

[3] The Court does recognize that, during his opening statement, Plaintiffs' counsel spoke about Defendants' non-production of evidence. Because the jury wasn't ultimately instructed on spoliation, those comments served little purpose and may have been confusing. Nevertheless, Plaintiffs' counsel was on notice, at the time he made his opening statement, that the proposed spoliation instruction was opposed by Defendants and might be rejected. Thus, his decision to delve into this topic in his opening statement was a tactical choice.

II. Merits

A. **The Form And Timing Of The Request Were Improper**

Plaintiffs did not file any motions to compel, motions for sanctions, or other discovery-related motions during the two-plus years of pretrial proceedings in this case. Instead, Plaintiffs treated spoliation like a run-of-the-mill fact issue to be resolved by the jury.

This approach was improper. "Spoliation is a discovery offense, so issues surrounding alleged spoliation should be resolved during discovery—not on the eve of trial." *Sherwood v. BNSF Ry. Co.*, 2019 WL 1004563, *2 (D. Idaho 2019). This, alone, justifies the rejection of Plaintiffs' proposed instruction. *See, e.g., Permasteelisa CS Corp. v. Airolite Co., LLC*, 2008 WL 2491747, *2 (S.D. Ohio 2008) (concluding that "Plaintiff has waived the right to ask for an adverse inference based on spoliation of evidence" because "Plaintiff has known about the alleged spoliation for more than one year . . . [and] had plenty of time to file a motion for discovery sanctions") (citation omitted); *Sherwood*, 2019 WL 1004563 at *2 ("Plaintiff's tactical choice of sliding an adverse-inference instruction into his stack of proposed jury instructions and otherwise waiting in the wings with planned spoliation evidence is disruptive . . . . For this reason alone, the Court could deny plaintiff's request for an adverse-inference instruction as untimely.").[4]

There are sound reasons to require a party seeking spoliation sanctions in federal court to file a pretrial motion for sanctions, as opposed to treating the request like a pure jury issue. As an initial matter, although Plaintiffs' proposed jury instruction cited Arizona law as the authority supporting their request for spoliation sanctions (Doc. 124 at 16), "a federal court applies federal law when addressing issues of spoliation of evidence." *Aiello v. Kroger Co.*, 2010 WL 3522259, *1 (D. Nev. 2010) (citations omitted). *See also Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) ("[A] spoliation ruling is evidentiary in nature and federal courts generally apply their own evidentiary rules in both federal

---

[4] Some states follow the same approach. *Remington Arms Co., Inc. v. Caldwell*, 850 S.W.2d 167, 170 (Tex. 1993) ("[T]he failure to obtain a pretrial ruling on discovery disputes that exist before commencement of trial constitutes a waiver of any claim for sanctions based on that conduct.").

- 6 -

question and diversity matters."); *Glover v. BIC Corp.*, 6 F.3d 1318, 1328-29 (9th Cir. 1993) (applying federal law to spoliation dispute).

Under federal law, "[t]here are two sources of authority under which a district court can sanction a party who has despoiled evidence: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 . . . ." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). In the Court's view, this underscores why judges, not juries, should be the ones deciding whether to impose spoliation sanctions. It seems fairly self-evident that questions pertaining to how judges should exercise their inherent authority are not jury issues. Similarly, when a party seeks sanctions or other types of relief under Rule 37, the judge acts as the factfinder concerning any underlying factual disputes. *See, e.g., Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1408 (9th Cir. 1990) ("The imposition of discovery sanctions pursuant to [Rule 37] is reviewed for abuse of discretion . . . . Findings of fact related to a motion for discovery sanctions are reviewed under the clearly erroneous standard. If the district court fails to make factual findings, the decision on a motion for sanctions is reviewed de novo.").

Admittedly, "[t]here is inconsistency in how courts deal with the division of fact-finding labor in spoliation cases." *Nucor Corp. v. Bell*, 251 F.R.D. 191, 202 (D.S.C. 2008). Specifically, although the court "makes the findings of fact necessary to reach a conclusion on the spoliation issue," because "[t]hat practice follows the usual rule that the court, rather than a jury, is responsible for finding facts on a motion for sanctions," some courts go further and "permit the jurors to *re-assess* the evidence and determine whether, in their judgment, spoliation has occurred at all." *Id.* at 202-03 (citations omitted and emphasis added).

The Court is not convinced that such reassessment by the jury is ever necessary or appropriate. Judges are fully capable of making discovery-related factual findings. Moreover, presenting spoliation-related factual disputes to juries creates a high risk of confusion and prejudice. For these reasons, many other courts have concluded that the question of whether sanctionable spoliation occurred should not be a jury issue. *See, e.g.,*

*Aaron v. Kroger Ltd. Partnership I*, 2012 WL 78392, *2 (E.D. Va. 2012) ("The Court already examined the evidence relating to Defendant's spoliation and decided that an adverse inference instruction is the most appropriate means of redress for the wrongdoing. The fact-finding necessary to resolve the spoliation issue has thus already occurred, thereby obviating any role for the jury on this matter. Contrary to Defendant's apparent wishes, the jury's function is not to serve as an appellate tribunal for this Court's decisions."); *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 26 (Tex. 2014) ("Our holding that the trial court, not the jury, bears responsibility for making the required spoliation findings and imposing a remedy affects the propriety of admitting evidence regarding spoliation at trial. Again, when a party requests spoliation sanctions, the trial court decides whether the accused party owed and breached a duty to preserve relevant evidence, assesses the culpability level of the spoliator, evaluates the prejudice suffered by the nonspoliating party, and imposes a remedy. The evidence considered by the trial court in making these findings, however, often has no bearing on the facts that are 'of consequence to the determination of the action' from the jury's perspective . . . . Further, the tendency of such evidence to skew the focus of the trial from the merits to the conduct of the spoliating party raises a significant risk of both prejudice and confusion of the issues.").[5]

Nevertheless, even if it were theoretically permissible to allow a jury to reassess a judge's factual findings on the issue of spoliation, Plaintiffs never asked the Court to make any pretrial findings in this case. Thus, there was nothing for the jury to reassess. This

---

[5] The Court notes that the 2015 advisory committee comments to Rule 37(e)(2) state that although the one particular spoliation-related factual finding—whether the party against whom sanctions are sought acted with a culpable mindset—"may be made by the court when ruling on a pretrial motion, when presiding at a bench trial, or when deciding whether to give an adverse inference instruction at trial," the court also may delegate that issue to the jury: "If a court were to conclude that the intent finding should be made by a jury, the court's instruction should make clear that the jury may infer from the loss of the information that it was unfavorable to the party that lost it only if the jury first finds that the party acted with the intent to deprive another party of the information's use in the litigation." *See also Woods v. Scissons*, 2019 WL 3816727, *6 (D. Ariz. 2019) (allowing jury to decide whether alleged spoliator acted with requisite intent); *Glover*, 6 F.3d at 1329-30 (noting that the district court allowed the jury to make factual findings on intent but not addressing the propriety of that approach). Nevertheless, Plaintiffs didn't ask the Court to delegate this particular sub-issue to the jury—they sought to have the jury make all of the spoliation-related factual findings.

amplifies why it was incumbent upon Plaintiffs to present their spoliation claim in a timely, proper form and why their decision to instead present it through the guise of a requested jury instruction was improper.

B. **The Proposed Instruction Was Legally Erroneous**

The Court also rejected Plaintiffs' proposed instruction because it misstated the law. *Bird v. Lewis & Clark College*, 303 F.3d 1015, 1022 (9th Cir. 2002) ("The district court committed no error in rejecting the proffered instructions" because "the proposed instructions overall misstate the law").

As noted, the proposed instruction would have permitted the jury to impose spoliation sanctions based upon the standards applicable under Arizona law. That was error—federal law applies in this circumstance.

The error was also significant. The proposed instruction stated the jury could apply an adverse inference if only two conditions were satisfied: (1) Defendants failed to preserve certain pieces of evidence and (2) Defendants are "without a reasonable explanation for such failure." (Doc. 124 at 16.) The proposed instruction, in other words, did not require the jury to consider whether Defendants acted with a culpable mindset and did not require the jury to consider whether Plaintiffs could have obtained the missing evidence from other sources.

These are not the correct standards under federal law. First, to the extent Plaintiffs were seeking spoliation sanctions based on the loss of electronically stored information ("ESI")—and at least one of the pieces of evidence addressed in the proposed instruction, Tracey Robertson's log books, constituted ESI—their request was governed by Rule 37(e) of the Federal Rules of Civil Procedure. Rule 37(e) was "completely rewritten" in 2015 to "provide[] a nationally uniform standard for when courts can give an adverse inference instruction, or impose equally or more severe sanctions, to remedy the loss of ESI." S. Gensler, 1 Federal Rules of Civil Procedure, Rules and Commentary, Rule 37, at 1070 (2018). Notably, a court cannot rely on its inherent authority or state law when deciding whether sanctions based on the loss of ESI are appropriate—the standards supplied by Rule

37(e) are exclusive. *Id.* at 1073 ("[The current version of Rule 37(e)] 'forecloses reliance on inherent authority or state law to determine when certain measures should be used.' If the court cannot make the findings necessary to act under subdivisions (1) or (2), then the court may not invoke inherent authority or state law to take those measures.") (citation omitted).

> The text of Rule 37(e) now provides:
>
> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, *and it cannot be restored or replaced through additional discovery*, the court:
>
> > (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > (2) *only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation* may:
> >
> > > (A) presume that the lost information was unfavorable to the party;
> > >
> > > (B) *instruct the jury that it may or must presume the information was unfavorable to the party*; or
> > >
> > > (C) dismiss the action or enter a default judgment.

*Id.* (emphases added). In short, a party seeking an adverse inference instruction under Rule 37(e)(2) must show both that the ESI "cannot be restored or replaced through additional discovery" and that the adverse party "acted with the intent to deprive another party of the information's use in litigation." Plaintiffs' proposed instruction, however, did not mention those topics or require the jury to make any findings on those topics.

Finally, to the extent Plaintiffs were seeking spoliation sanctions based on the loss of non-ESI evidence, their request was governed by the standards set forth in the Ninth Circuit's inherent authority case law. *Glover*, 6 F.3d at 1329 ("Short of excluding the disputed evidence, a trial court also has the broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior."). Although the standards applicable in this context are not

the same as under Rule 37(e)(2),[6] they are still different from the "without a reasonable explanation" formulation contained in Plaintiffs' proposed instruction.

### C. The Evidence Presented To The Court Does Not Support The Imposition Of An Adverse-Inference Sanction

Plaintiffs also failed, on the merits, to establish an entitlement to an adverse inference instruction under the relevant federal standards.

Plaintiffs' proposed instruction complained about Defendants' non-production or destruction of seven pieces of evidence. The first was "[a] business card providing the identity of a witness to the collision." (Doc. 124 at 16.) But the identity of this witness was also disclosed in the police report, which Plaintiffs have long possessed. An adverse inference instruction is not warranted in this circumstance. *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 824-25 (9th Cir. 2002) (affirming district court's refusal to give an adverse inference instruction, even though non-movant had destroyed slides that were potentially relevant to the litigation, because the movant could have obtained the same information from other sources).

The second piece of evidence was "Tracey Robertson's driver's log during the trip leading up to the collision." (Doc. 124 at 16.) Here, again, Plaintiffs could have obtained this information from other sources—one of the police officers who responded to the crash downloaded Ms. Robertson's driver's log, yet Plaintiffs never sought to subpoena that information. Additionally, it turns out that Defendants didn't destroy their copy of Ms. Robertson's log books—they were located and produced to Plaintiffs midway through trial. Although the Court relied on the late timing of this disclosure to bar Defendants from introducing the log books into evidence during their case-in-chief (Defendants wished to do so because the logs were favorable to their position), it would have been bizarre to pretend the logs had been destroyed and then instruct the jury that it could infer the logs were unfavorable to Defendants.

---

[6] *Glover*, 6 F.3d at 1329 ("[A] finding of 'bad faith' is not a prerequisite to this corrective procedure. Surely a finding of bad faith will suffice, but so will simple notice of potential relevance to the litigation.") (citation and internal quotation omitted).

The third category of evidence was "Bills of lading for the shipment on Defendants' vehicle at the time of the collision." (Doc. 124 at 16.) An adverse inference based on the alleged loss of this evidence was unwarranted for several reasons. First, it's not clear the bills of lading were lost—Defendants contend they produced them (Doc. 145 at 5; Doc. 174 at 5-6) while Plaintiffs dispute whether the documents produced by Defendants are the actual bills of lading (Doc. 172 at 4-5). The record is so undeveloped that the Court has no basis for sorting out who is correct. This is exactly why this type of issue should be raised via a pretrial motion, not via trial briefs submitted in the middle of trial. Second, and in a related vein, it's unclear whether Plaintiffs ever complained about Defendants' lack of production during the discovery process—they never filed a motion to compel and didn't submit, as attachments to their trial brief, any of the parties' discovery-related communications on this topic. This suggests that Plaintiffs themselves didn't view the bills of lading as particularly important evidence. *Cf. Roberts v. Whitfill*, 191 S.W.3d 348, 361 (Tex. Ct. App. 2006) ("[W]hile we do not decide whether a spoliation instruction was proper, we note several concerns. First, Whitfill did not pursue her motion to compel and obtain an order requiring Roberts to produce [the missing data]. We thus express some doubt about the materiality and relevance of that data overall and whether the deleted data . . . seriously impaired Whitfill's ability to present her case."). Third, even assuming Defendants failed to preserve the bills of lading, those documents' relevance was too slight to warrant an adverse inference instruction. Plaintiffs' apparent theory was that the bills of lading would show that Mr. Robertson was awake during the pickup on the morning of March 11—and was therefore fatigued and inattentive by the time of the accident on March 12—but Mr. Robertson admitted at trial that he was awake during the March 11 morning pickup. *Med. Lab. Mgmt. Consultants*, 306 F.3d at 824 ("The district court did not abuse its discretion by concluding that, under the totality of the circumstances, an unfavorable inference was not warranted because a rational jury would not infer that Defendants' loss of the [evidence in question] indicated that the [evidence] threatened Defendants' legal position and needed to be covered up.").

The fourth and sixth categories of evidence were "Defendants' vehicle's brake system" and "[t]he ability for Plaintiffs to inspect Defendants' vehicle prior to it being repaired." (Doc. 124 at 16.) The Court fully agrees with Defendants that no adverse inference was warranted as to these items because "Plaintiffs did not present a [preservation] letter until three months after the accident. Defendants waited 19 days to repair the vehicle in question and at that time had not heard from Plaintiffs. . . . Defendants do not have a duty to preserve all evidence indefinitely, especially when keeping the vehicle in a state of disrepair would harm their business interests. Further, the investigating officers performed a full inspection of the vehicle and found no faults with anything mechanical. They also took numerous photographs which are available to Plaintiffs." (Doc. 174 at 6.) Additionally, it was undisputed—based on the DDEC report—that Mr. Robertson didn't attempt to begin braking until a second or so before the accident. The issue in this case, in other words, wasn't whether there was something wrong with the brakes—Plaintiffs' theory was that Mr. Robertson's inattentiveness caused him to apply the brakes too late.

The fifth piece of evidence was "Defendants' accident investigation kit filled out by Defendant Steven Robertson after the collision." (Doc. 124 at 16.) But Defendants produced Mr. Robertson's hand-written statement and Plaintiffs failed to establish that the partially-completed accident kit contained anything apart from that statement. Indeed, Plaintiffs seemed to acknowledge in the Joint Final Pretrial Order that "Defendants produced the portion of the accident kit that was completed." (Doc. 152 at 12.)

Finally, the seventh piece of evidence was "Defendant Steven Robertson's personal and company wireless communications devices." (Doc. 124 at 16.) In particular, Plaintiffs focused on the non-production of Mr. Robertson's cell phone records, which they apparently hoped would show that Mr. Robertson was talking or texting on his phone at the time of the accident. (Doc. 172 at 7-8.) The difficulty here is that although Plaintiffs submitted a request for production ("RFP") to Mr. Robertson in April 2018 for these materials, he never responded to the RFP. (*Id.* at 8.) Plaintiffs' failure to file a subsequent

motion to compel, or otherwise bring the issue to the Court's attention during the discovery process, suggests they didn't believe the records were particularly important. *Roberts,* 191 S.W.3d at 361. Additionally, Plaintiffs likely could have obtained the same information through a subpoena to Mr. Robertson's cell-phone provider but declined, for whatever reason, to do so. *Med. Lab. Management Consultants*, 306 F.3d at 824-25.

### D. No Reasonable Juror Could Have Resolved The Elements In The Proposed Instruction In Plaintiffs' Favor

The final reason why the Court rejected Plaintiffs' proposed instruction is that, even if spoliation were a pure jury issue (it isn't) and even if Plaintiffs' proposed instruction had correctly identified the legal standards governing spoliation claims (it didn't), no reasonable juror could have ruled in Plaintiffs' favor under those standards.

As noted, the proposed jury instruction asked the jury to decide (1) whether Defendants "failed to preserve" the seven categories of evidence listed above and (2) whether Defendants lacked "a reasonable explanation for such failure." (Doc. 124 at 16.) Plaintiffs' presentation at trial, however, didn't touch on those topics—Plaintiffs didn't admit any exhibits that addressed whether the seven categories of evidence had been produced, lost, and/or destroyed and didn't call any witnesses to address those subjects.[7] Additionally, the stipulations of fact contained in the Joint Final Pretrial Order didn't address those subjects. (Doc. 152 at 2-8.)

Given this record, there was no need to submit the instruction to the jury. *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1360 (9th Cir. 1986) ("A party is not entitled to an instruction on its theory of the case if that theory lacks

---

[7] Plaintiffs did attempt to admit three letters (Exhibits 150-152) that Defendants' counsel had sent to Plaintiffs' counsel in response to Plaintiffs' RFPs, but the Court sustained Defendants' objection to those exhibits under Rule 403 because the documents were not redacted or limited to the seven disputed pieces of evidence and instead contained confusing and prejudicial references to other matters, including Defendants' invocation of the attorney-client privilege. Plaintiffs also attempted to admit two preservation-of-evidence letters that had been sent to Defendants' representatives following the collision (Exhibits 23-24), but the Court sustained Defendants' objection to those exhibits because there was no other spoliation-related evidence in the record, so the admission of those two letters (one of which was addressed personally to Defendants' trial counsel) would have served no legitimate purpose and only led to juror confusion.

support . . . in the record.").

Dated this 27th day of January, 2020.

_____
Dominic W. Lanza
United States District Judge

- 15 -